IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | 1:19-CRIM-20(2) |
| | ) | |
| **CHAD BEDNARSKI,** | ) | Re: ECF No. 126 |
|     Defendant | ) | |

**MEMORANDUM ORDER**
on
**Motion for Compassionate Release**

U.S. D.J. Susan Paradise Baxter

On September 1, 2020, Chad Bednarski pleaded guilty to one count of conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349.

Mr. Bednarski is serving his prison sentence at FCI Morgantown in Morgantown, West Virginia. He seeks a reduction in his prison sentence under 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" for compassionate release. ECF No. 126. Mr. Bednarski, acting pro se, argues that the novel coronavirus pandemic combined with his physical health conditions justify his early release under the statute. The Government opposed the Motion. ECF No. 128. Although no reply brief has been filed, none is required and this matter is ripe for disposition.

Although the Court finds that the motion is properly before it, compassionate release is not warranted. Mr. Bednarski's medical conditions do not rise to an "extraordinary and compelling" level and consideration of the factors set forth in 18 U.S.C. § 3553(a) yield the conclusion that his criminal history weighs against his release. Thus, the Motion for Reduction of

1

Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 126] is denied without prejudice subject to its reassertion should circumstances warrant.

## I. BACKGROUND

On September 1, 2020, Chad Bednarski pleaded guilty to one count of conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349. ECF No. 79. On February 12, 2021, the undersigned sentenced Mr. Bednarski to a term of 32 months incarceration and two years of supervised release. ECF No. 114; ECF No. 116. The sentence was below the advisory guideline range of forty-one to fifty-one months.

On March 23, 2021, Mr. Bednarski self-reported to the Federal Correctional Institution at Morgantown, West Virginia. As of today, Mr. Bednarski has served only a fraction of his 32-month sentence. His projected release date is June 30, 2023.

Mr. Bednarski is currently still incarcerated at FCI Morgantown in Morgantown, West Virginia. The Bureau of Prisons website reflects that as of December 29, 2021, there were no active cases of COVID-19 among inmates and one case among staff. *See* https://www.bop.gov/coronavirus/index/jsp, last visited December 30, 2021. The website also reveals that 157 inmates and 52 staff have recovered from COVID-19, while zero inmates or staff have died. *Id.*

Mr. Bednarski is a fifty-year-old man who asserts that he suffers from various medical issues: "coronary artery disease (CAD), hypertension, hyperlipidemia, hyper triglycerides, transient ischocroic [SIC] attack (mini stroke), and anxiety disorder with panic episodes." ECF No. 126, page 3.

2

**II.     LEGAL STANDARD**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 Fed. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's[1] amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent they apply; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *United States v. Burrus*, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) *citing* 18 U.S.C. § 3582(c)(1)(A)(i).

At every stage of the analysis, Mr. Bednarski bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. *United States v. Alford*, 2021 WL 1561508, at *5 (W.D. Pa. Apr. 21, 2021) *citing United States v. Smith*, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020). To satisfy this burden, a movant must produce *evidence* to the court. *United States v. Wilder*, 2021 WL 1224531, at *3 (W.D. Pa. Apr. 1, 2021) (internal citations omitted).

---

[1] The First Step Act has been described as a "landmark piece of criminal justice reform legislation that amended numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Somerville*, 463 F. Supp. 3d 585, 590 (W.D. Pa. May 29, 2020) *quoting United States v. Rodriguez*, 451 F. Supp. 3d 392, 394-96 (E.D. Pa. Apr. 1, 2020).

### III.     DISCUSSION

After considering the relevant factors, this Court concludes that Mr. Bednarski's motion is properly before it. Mr. Bednarski has not established that his asserted medical conditions combined with the coronavirus pandemic constitute "extraordinary and compelling" reasons warranting his release. Moreover, even the required consideration of the § 3553(a) factors counsels the Court to conclude that Mr. Bednarski's custodial sentence remains necessary to protect the public and deter further future criminal conduct, to reflect the seriousness of the offense, to provide just punishment, and to promote respect for the law.

#### A.  **Administrative Exhaustion**

As amended, 18 U.S.C. § 3582(c) permits courts to modify sentences "upon the motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, before petitioning a court for relief under the statute, a defendant who is in the custody of the Bureau of Prisons must first file an administrative request for compassionate release with the warden of his facility and then either: (1) fully exhaust Bureau of Prisons' administrative remedies; or (2) wait 30 days from the date their administrative request was filed with the warden. 18 U.S.C. § 3582(c). *See also United States v. Raia*, 954 F.3d 594, 595 (3d Cir. Apr. 2, 2020) ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.' But before they make such requests, defendants must at least ask the Bureau of Prisons to do so on their behalf and give Bureau of Prisons thirty days to respond.").

Mr. Bednarski submitted a compassionate release request to the Warden on August 13, 2021, and the Warden denied his request on August 27, 2021. ECF No. 126-1. Mr. Bednarski, acting pro se, filed his instant request for compassionate release on November 12, 2021. The Government acknowledges that Mr. Bednarski has exhausted his administrative remedies.

### B. "Extraordinary and Compelling Reasons"

As a threshold matter, this Court must determine whether it has the authority to independently assess whether there are "extraordinary and compelling reasons" to justify compassionate release. *See United States v. Brown*, 2021 WL 1920868, at *4 (W.D. Pa. May 15, 2021) ("A question that arises in this matter, and has arisen in other similar cases, is whether, and if so to what degree, the current provisions of the Guidelines and relevant Application Notes at U.S.S.G. § 1B1.13 promulgated by the Sentencing Commission in 2018 are applicable in consideration of this Motion.").

Title 18 Section 3582 does not define the phrase "extraordinary and compelling reasons," but delegates that task to the U.S. Sentencing Commission.[2] The outdated language, which provides that the Director of the Bureau of Prisons determine what constitutes extraordinary and compelling circumstances, directly conflicts with the First Step Act. *See United States v. Pollard*, 2020 WL 4674126, at *5 (E.D. Pa. Aug. 12, 2020). The Sentencing Commission defined "extraordinary and compelling reasons" as it related to the Bureau of Prisons' discretion under the pre-First Step Act version of § 3582(C)(1)(A)(i), but the Commission has not updated the

---

[2] Under the statute, the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

applicable Policy Statement[3] found in the Sentencing Guidelines Manual since the First Step Act became law. *See United States v. Medina*, 2021 WL 1581608, at * 1 (E.D. Pa. Apr. 22, 2021) (explaining history of the statutory framework).

Although the relevant portions of the Guidelines are advisory and pre-date passage of the First Step Act, they do provide a point of reference for the Court's consideration. The Application Notes to § 1B1.13 of the Guidelines enumerate some specific conditions supporting compassionate release and include a catch-all phrase "other reasons as determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1. Although the commentary states that the "other reasons" are to be determined by the Director of the Bureau of Prisons, a "vast majority" of courts have determined that "courts may independently evaluate 'extraordinary and compelling reasons' to reduce sentences under the catch-all provision." *United States v. Alford*, 2021 WL 1561508, at *6 and n.5. (collecting cases).[4] Although the Third Circuit has concluded that § 1B1.13 policy statement is not currently binding in connection with motions filed by defendants, *see United States v. Andrews*[5], 12 F.4th 255 (3d Cir. Aug. 30, 2021), other courts of

---

[3] The Policy Statement "suggests that non-terminal medical conditions may constitute extraordinary and compelling reasons if 'a defendant is suffering from a serious physical or medical condition … that substantially diminished the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Brown*, 2021 WL 1920868, at *5, *quoting* § 1B1.13, cmt. n. (1)(A)(ii).

[4] When determining whether there are extraordinary and compelling circumstances supporting release, at least two judges within this district have used an analysis examining the definitions of the words themselves. *United States v. Somerville*, 463 F. Supp. 3d 585, 595-96 (W.D. Pa. May 29, 2020); *Alford*, 2021 WL 1561508, at *7. "Generally, 'extraordinary' means 'beyond what is usual, customary, regular, or common' and a 'compelling need' is a 'need so great that irreparable harm or injustice would result if it is not met." *United States v. Griffin*, 2021 WL 1853540, at *2 (E.D. Pa. May 7, 2021) (internal citations omitted).

[5] *See also United States v. Porter*, 2021 WL 5989142, at *2 n.1 (W.D. Pa. Dec. 17, 2021) (opining that "the policy statements remain persuasive authority for the Court as it determines what constitutes an 'extraordinary and compelling' reason for a sentence reduction.").

appeals have recognized that it continues to provide important "guideposts." *United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. Mar. 29, 2021). *See also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020) (following reasoning of Second Circuit that the absence of an applicable policy statement does not create "a sort of Wild West in court with every district judge having an idiosyncratic release policy" because § 1B1.13 and its Application Notes "provide a working definition of extraordinary and compelling").

The coronavirus pandemic, on its own, cannot and does not constitute an extraordinary and compelling reason to justify compassionate release. The Court of Appeals for the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering Bureau of Prisons' statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Campbell*, 2021 WL 5140068, at *3 (W.D. Pa. Nov. 4, 2021) *quoting United States v. Raia*, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020). So then, while the existence of the novel coronavirus may not independently warrant compassionate release, courts must consider whether the defendant's medical conditions, in the context of the ongoing pandemic, rise to an "extraordinary and compelling" level to justify compassionate release.

The burden to show that extraordinary and compelling reasons exist lies with the defendant. *United States v. Harvey*, 2021 WL 858449, at * 2 (W.D. Pa. Mar. 8, 2021) *citing United States v. Smith*, 2020 WL 4047485, at *2 (W.D. Pa. Jul. 20, 2020).

Mr. Bednarski has provided five pages of medical records in support of his motion and the government has provided additional medical records. *See* ECF No. 126; ECF No. 131. Mr. Bednarski asserts that he suffers from various medical issues: "coronary artery disease (CAD), hypertension, hyperlipidemia, hyper triglycerides, transient ischocroic [sic] attack (mini stroke),

and anxiety disorder with panic episodes." ECF No. 126, page 3. Of these, only coronary artery disease and hypertension, are recognized by the Centers for Disease Control[6] as conditions making it more likely that a person may become severely ill[7] from COVID-19. Each of these CDC-recognized conditions[8] will be addressed in turn.[9]

---

[6] This Court takes judicial notice of the Centers for Disease Control ("CDC") website, which states that certain underlying medical conditions pose an increased risk of severe illness from COVID-19, and other conditions may pose such a risk, based on limited evidence. *See* Federal Rule of Evidence 201(1)(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[7] "Severe illness" is defined by the CDC as meaning a person with COVID-19 may "be hospitalized, need intensive care, require a ventilator to help them breathe, or die." *See* https:/www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions-html, last visited January 7, 2022.

[8] The remainder of Mr. Bednarski's medical conditions are not recognized by the CDC as conditions that make individuals more likely to become severely ill with COVID-19.

[9] The medical records indicate that Mr. Bednarski is pre-diabetic, or in other words, is at risk to develop diabetes. An A1C test in April 2021 revealed a result of 5.9%, which puts Mr. Bednarski in the pre-diabetic range. While diabetes is widely understood by doctors and scientists to be an underlying condition associated with high risk for severe COVID-19, pre-diabetes is not. *See United States v. Gonzalez,* 2021 WL 662496, at *2 (E.D. Pa. Feb. 19, 2021) ("pre-diabetes is not a COVID-19 risk factor."). So, Mr. Bednarski's pre-diabetic condition, either alone or in combination with other conditions, does not rise to the level of an extraordinary and compelling reason for compassionate release. *See United States v. Thomas*, 2021 WL 461890, at *2 (W.D. Pa. Feb. 9, 2021) (J. Colville) ("[t]he Court is unable to conclude that Mr. Thomas's current health conditions …, even when considered in combination of his pre-diabetes, rise to an extraordinary and compelling level."); *United States v. Davis*, 2020 WL 5361748, at *4 (W.D. Pa. Sept. 8, 2020) (J. Horan). *Compare with United States v. Clancy*, 2021 WL 1826906, at *9 (W.D. Pa. May 7, 2021) (C.J. Hornak) (concluding that movant had "established that his asthma and his prediabetic condition are sufficiently severe in combination to make his risk of increased susceptibility to severe illness from COVID-19 higher than that of the average inmate" based on testimony from a medical expert).

*Coronary Artery Disease*

The medical records submitted by Mr. Bednarski do not show a diagnosis of coronary artery disease. *See* ECF No. 126-2, page 2. It is Mr. Bednarski's burden to demonstrate his entitlement to compassionate release, at this and every stage of the analysis. *United States v. Grasha*, 489 F.Supp.3d 403, 406 (W.D. Pa. Sept. 24, 2020). Here, Mr. Bednarski has failed to meet that burden.

*Hypertension*

The medical records provided to the Court do indicate that Mr. Bednarski suffers from hypertension. ECF No. 126-2, page 2. The CDC recognizes both pulmonary hypertension (high blood pressure in the lungs) and hypertension as conditions that may make an individual more likely to become severely ill from COVID-19.[10]

While the medical records provided by Mr. Bednarski indicate a numerical blood pressure reading of 141/92 on May 10, 2021, this evidence is insufficient alone to rise to the level of an extraordinary and compelling reason to justify his compassionate release. In other medical records submitted by the Government, seven pressure readings are recorded. The highest of the readings are 141/92 and 162/74, while the lowest is 111/68. Despite these readings, some of which are elevated, this Court cannot determine with any degree of medical certainty the extent or severity of Mr. Bednarski's condition without more information.

Furthermore, federal courts "'routinely hold that compassionate release is not warranted'" where there is no indication a defendant's high blood pressure cannot be properly

---

[10] https:/www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions, updated October 14, 2021, site last visited on January 7, 2022.

controlled with medication or other medical care." *United States v. Gonzalez*, 2021 WL 662496, at *2 (E.D. Pa. Feb. 19, 2021) *aff'd*, 850 Fed. App'x 821 (3d Cir. 2021) (string citation omitted).

*COVID-19 Vaccination*

While the records reflect that Mr. Bednarski has some serious health conditions which are recognized by the CDC as creating risks of severe illness from COVID-19 (and he may have some other conditions which may rise to this level), the evidence reveals that Mr. Bednarski has been fully vaccinated against the virus. He was vaccinated with the Pfizer vaccine on March 18, 2021 and April 7, 2021 and has received a booster on November 4, 2021. *See* ECF No. 128, page 2. This full vaccination mitigates his risks. *See United States v. Slone*, 2021 WL 1374634, at *4 (E.D. Pa. Apr. 12, 2021) ("The Centers for Disease Control reports the Moderna vaccine was 94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected. The Centers for Disease Control advises COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death. Mr. Slone now has significant protection against serious illness or death should he contract COVID-19 and does not demonstrate his asthma in the context of COVID-19 constitute extraordinary and compelling reason to grant his motion for compassionate release.") (internal citations and footnotes omitted).

Not only is Mr. Bednarski vaccinated, but the BOP website confirms that inmate vaccinations are well underway throughout the Federal Correctional Institution at Morgantown, where he is incarcerated. As of January 6, 2022, three hundred seventy-four inmates (or 86.6%

10

of the institution[11]) and one hundred twelve staff there have been fully vaccinated. *See* http://bop.gov/index.jsp, last visited January 7, 2022.  The vaccination rate among the inmate population is greater than the rate of vaccination in both the county of Erie and the state of Pennsylvania. *See* www.covid.cdc.gov/covid-date-tracker, last visited January 7, 2022. On this record, Mr. Bednarski has not demonstrated, by a preponderance of the evidence, that there are extraordinary and compelling circumstances to support his compassionate release. *See United States v. Sanders*, 2021 WL 1428546, at *3 (D. Mar. Apr. 15, 2021) ("On the present record, though, this Court concludes that Sanders's vaccination status removes his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason.'").

### C.  **Potential Danger to the Community and the § 3553(a) Factors**

Even if Mr. Bednarski had been able to demonstrate extraordinary and compelling circumstances, "[n]ot every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under § 3582(c)(1)(A)." *United States v. Griffin*, 2021 WL 1853540, at *3 (E.D. Pa. May 7, 2021) *quoting United States v. Babbitt*, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020). A court must also consider (1) whether the defendant would present a danger to the community under 28 U.S.C. § 3142(g); and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a).

To determine whether a defendant would be a danger to the community, the Court considers "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, …

---

[11] As of January 7, 2022, there were 429 inmates at the facility. *See* https://www.bop.gov/locations/institutions/mrg/.

11

community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "[I]n considering the § 3553(a) factors, the Court should assess whether those factors outweigh the extraordinary and compelling reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *Brown*, 2021 WL 1920868, at *10, *quoting United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D. N.Y. Apr. 22, 2020).

It is defendant's burden to show that the § 3553(a) factors support the requested reduction and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *United States v. Burris*, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) (internal citation omitted). As the Court of Appeals affirmed in *United States v. Pawlowski*, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court. 967 F.3d 327 (3d Cir. Jun. 26, 2020). "That discretion includes the district court's authority to consider the length of the defendant's original sentence, including portions served and remaining when weighing the § 3553(a) factors." *Brown*, 2021 WL 1920868 at *11, *citing Pawlowski*, 967 F.3d at 330-31.

I have reviewed the sentencing documents to assess the danger to the community and the § 3553(a) factors. Here, any risks presented by Mr. Bednarski's medical conditions combined with the coronavirus pandemic do not outweigh the § 3553(a) factors and the threat of danger to the community. This Court is not persuaded that the § 3553(a) factors warrant the substantial reduction in Bednarski's term of imprisonment what would be required to grant his request for compassionate release. To date, Mr. Bednarski has served well less than half of his sentence. In

sentencing Mr. Bednarski only eleven months ago, the Court considered each of the § 3553(a) factors and found those factors supported a sentence below the Guidelines. It is difficult to see how the same factors that justified a sentence of thirty-two months less than a year ago justify an eleven-month sentence today.

The nature and circumstances of the offense and the characteristics of Mr. Bednarski weigh against compassionate release. Mr. Bednarski participated in a multi-million dollar fraud scheme arising out of his employment as a finance manager at a car dealership. While Mr. Bednarski's crimes were not violent and marked his first criminal conviction, his actions were egregious in that he defrauded victims out of more than 1.5 million dollars. Mr. Bednarski pled guilty and did not dispute his active involvement in the scheme. Mr. Bednarski's participation in the scheme constituted a serious crime.

Reducing a sentence (that was already below the guideline range) by almost two-thirds could have a deleterious impact on the public's respect for the law and deterrence. While I have no evidence that he will repeat his criminal conduct, I also have no information about his conduct or behavior while incarcerated beyond his conclusory statements that he has been rehabilitated. As such, and in light of these § 3553(a) factors, reducing his sentence could undermine the need to promote deterrence of other large-scale crimes. Mr. Bednarski's original sentence is necessary to protect the public from the danger to the community, thereby making a reduction inconsistent with § 3553(a)(2)(C) and U.S.S.G. § 1B1.13(2).

The original sentence of 32 months was below the guideline range, the maximum of which was fifty-one months. This Court believes that the original sentence remains sufficient, but not greater than necessary to meet all the goals of sentencing in this case. *See* 18 U.S.C. § 3553(a)(1).

Given the seriousness of his crimes, the need to impose appropriate punishment, the need to deter future criminal conduct, and to promote respect for the law, Mr. Bednarski's compassionate release cannot be justified on the record as it now stands.

### IV.     CONCLUSION

Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors. *Griffin*, 2021 WL 1853540, at *3. Because he has not demonstrated extraordinary and compelling circumstances, and because he has not shown that his early release would be consistent with the statutory factors, Mr. Bednarski's motion for compassionate release is denied without prejudice subject to reassertion should circumstances warrant.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

Dated: January 7, 2022